[Cite as *State v. Walker*, 2021-Ohio-580.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 109142 |
| JALEN J. WALKER, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** VACATED AND REMANDED
**RELEASED AND JOURNALIZED:** March 4, 2021

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-19-637688-A and CR-19-639144-B

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and John Farley Hirschauer, Assistant
Prosecuting Attorney, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and
Aaron T. Baker, Assistant Public Defender, *for appellant.*

EILEEN T. GALLAGHER, J.:

{¶ 1} Defendant-appellant Jalen Walker brings the instant appeal

challenging the trial court's judgment ordering him to enroll in the violent offender

database ("VOD"). Appellant argues that the trial court failed to provide him with

proper notice, applied the wrong standard in determining whether to order appellant to enroll in the VOD, and that the trial court's judgment violated his constitutional rights. After a thorough review of the record and law, this court vacates the trial court's judgment ordering appellant to enroll in the VOD, and remands the matter to the trial court for further proceedings consistent with this opinion.

## I. Factual and Procedural History

{¶ 2} The instant matter pertains to appellant's involvement in two separate incidents. The first incident occurred on August 2, 2018, and involved appellant fleeing from the police. Appellant was charged in Cuyahoga C.P. No. CR-19-639144-B for his involvement in the August 2, 2018 incident.

{¶ 3} The second incident occurred on October 14, 2018, and involved a shooting that took place in an apartment in Euclid, Ohio. Appellant was charged in Cuyahoga C.P. No. CR-19-637688-A for his involvement in the October 14, 2018 incident.

### A. August 2, 2018 Incident — Cuyahoga C.P. No. CR-19-639144-B

{¶ 4} Officer Jonathan Barth of the University Circle Police Department, along with two other patrol vehicles, began pursuing a vehicle that had been identified by a license plate reader as being stolen. The officers attempted to initiate a traffic stop near the intersection of Euclid Avenue and East 105th Street, but the vehicle sped off at a high rate of speed. The officers continued to pursue the vehicle,

and the chase continued into the parking lot of a Rite Aid at the intersection of St. Clair Avenue and East 105th Street.

{¶ 5} The occupants exited the vehicle and attempted to flee the scene. Surveillance footage showed three males exiting the vehicle and running behind the store. Two of the three males, subsequently identified as appellant and codefendant Martinez Martin, "double[d] back" as Officer Barth approached them in his patrol vehicle. The third male did not double back, and continued running; he was subsequently identified as Michael Walker.

{¶ 6} One of the two males that doubled back continued running, and the other male drew a handgun from his hip, pointed it at Officer Barth's vehicle, and opened fire. Martin informed detectives during an interview that appellant was the individual that fired shots at Officer Barth's vehicle.[1]

{¶ 7} Appellant was originally charged in Cuyahoga County Juvenile Court, in Cuyahoga J.C. No. DL-18-115198. In April 2019, the matter was bound over from the juvenile court to the general division of the common pleas court for criminal prosecution.

{¶ 8} In CR-19-639144-B, appellant was charged in a four-count indictment on April 18, 2019, with (1) felonious assault, with a furthermore clause that the victim was a peace officer, and one- and three-year firearm specifications and forfeiture specifications; (2) receiving stolen property; (3) improperly handling

---

[1] The subsequent interview took place after Martin and appellant had been arrested for their involvement in the October 14, 2018 incident.

firearms in a motor vehicle; and (4) having weapons while under disability with forfeiture specifications.

**B. October 14, 2018 Incident — Cuyahoga C.P. No. CR-19-637688-A**

{¶ 9} Appellant was charged for his involvement in a shooting that occurred in an apartment in Euclid, Ohio, during which the victim, Michael Walker, was shot and killed. Appellant and codefendant Martin were at the scene when officers from the Euclid Police Department arrived at the apartment. The officers placed appellant and Martin into a police vehicle for questioning. One officer observed Martin throw a handgun underneath a police vehicle. Officers also located two separate handguns near the sidewalk, a few feet away from the police vehicle where appellant and Martin had been escorted for questioning.

{¶ 10} Both Martin and appellant initially informed officers that an argument occurred between the victim and an individual named Terrell White,[2] after which White shot the victim. Martin subsequently informed officers that White was "lured" to the apartment by Martin, appellant, and the victim. Martin, pretending to be a female, sent a text message to White planning to lure White to the apartment to get revenge for a prior "beef" between White and the victim.

{¶ 11} Investigators believed that appellant, Martin, and the victim were all armed and that they drew their weapons when White arrived at the apartment. White was also armed. White drew his gun, and shot and killed the victim. Martin

---

[2] The record contains two different spellings for White's first name: "Terrell" and "Treal."

admitted to police to firing his weapon. Investigators were unable to ascertain whether appellant also discharged his weapon in the apartment.

{¶ 12} In CR-19-637688-A, appellant was charged in a ten-count indictment in the general division of the common pleas court on March 11, 2019, with (1) murder; (2) aggravated robbery; (3) felonious assault; (4) felonious assault; (5) attempted murder; (6) discharge of a firearm on or near prohibited premises; (7) receiving stolen property; (8) tampering with evidence with forfeiture specifications; (9) tampering with evidence; and (10) having weapons while under disability. Counts 1-6, and Count 8 contained one- and three-year firearm specifications.

{¶ 13} On August 19, 2019, appellant pled guilty in both criminal cases. First, in CR-19-637688-A, appellant pled guilty to involuntary manslaughter with one- and three-year firearm specifications (amended Count 1); aggravated robbery (amended Count 2); attempted murder (amended Count 5); discharge of a firearm on or near prohibited premises (amended Count 6); receiving stolen property (Count 7); tampering with evidence with forfeiture specifications (amended Count 8); and tampering with evidence (Count 9). Counts 3, 4, and 10, and the remaining specifications charged in the indictment, were nolled.

{¶ 14} Second, in CR-19-639144-B, appellant pled guilty to felonious assault of a peace officer with one- and three-year firearm specifications and forfeiture specification(s) (Count 1); receiving stolen property, motor vehicle (Count 2); and improperly handling firearms in a motor vehicle (Count 3). Count 4 was nolled.

{¶ 15} During the change-of-plea hearing, the trial court advised appellant that the attempted murder conviction in CR-19-637688-A would require him to enroll in the VOD: "I also need to inform you that there is a duty to enroll as a violent offender. There's a new registry that the legislature just passed. I need to inform you that you're pleading to a felony that qualifies you to register as a violent offender." (Tr. 44.) Appellant confirmed that he understood the trial court's advisement. (Tr. 46.) The trial court ordered a presentence investigation report and set the matter for sentencing.

{¶ 16} The trial court held a sentencing hearing on September 26, 2019. In CR-19-637688-A, the trial court imposed a prison sentence of six years. In CR-19-639144-B, the trial court imposed a prison sentence of nine years. The trial court ordered the six-year and nine-year prison sentences to run consecutively to one another, for an aggregate prison term in both cases of 15 years.

{¶ 17} During the same hearing, the trial court advised appellant of his duty to register as a violent offender based on his attempted murder conviction. (Tr. 89.) The trial court, for the first time, informed appellant about the rebuttable presumption that he enroll in the VOD, and that he "must file a written motion" in order to rebut the presumption, that the preponderance of the evidence standard applied to the enrollment determination, and the factors that the court will consider in determining whether to order appellant to enroll.

{¶ 18} The state conceded that appellant was not the principal offender in the commission of the attempted murder offense. (Tr. 92.) However, with respect to the rebuttable presumption, the prosecutor argued,

> this is a — was originally a felony murder case, which [appellant] obviously pled to, involuntary manslaughter, someone died from this.
>
> [Appellant] was also carrying a firearm during this, even though he is not the principal offender as far as the attempted murder charge.
>
> Attempted murder charge contemplates, I believe, Terrell White, and it was for Martinez Martin shooting at him.

(Tr. 92.)

{¶ 19} The trial court explained that even though the state conceded that appellant was not the principal offender, the court could still require appellant to register as a violent offender under the preponderance of the evidence standard. The trial court reviewed the four factors set forth in R.C. 2903.42(A)(4)(a)(i)-(iv) that the court would consider in determining whether to order appellant to enroll in the VOD: (1) whether appellant has committed any prior offenses of violence, and whether the prior convictions indicate a propensity for violence, (2) the results of any risk assessment conducted on appellant, (3) appellant's degree of culpability or involvement in the underlying attempted murder offense, and (4) the public interest and safety. (Tr. 93.) The trial court acknowledged that appellant's PSI labeled appellant as "high risk." (Tr. 94.)

{¶ 20} The trial court called a brief recess to allow appellant to discuss the enrollment issue with defense counsel. Following the recess, the trial court held a

hearing to determine whether appellant was required to enroll in the VOD.  The trial court entertained arguments from both the state and defense counsel.

{¶ 21} The prosecutor conceded again that appellant was not the principal offender with respect to the attempted murder offense.  Although appellant was not the principal offender, the prosecutor asked the trial court to consider the other three factors.  The state argued that three of the four factors were "outlined in [appellant's] PSI."  (Tr. 95.)

{¶ 22} Defense counsel asserted that appellant refused to sign the sheet outlining the notice of duties in the event he were ordered to enroll in the VOD.  Counsel explained that appellant wanted a hearing on the enrollment issue.  Defense counsel opined that "the presumption really is in [appellant's] favor that he shouldn't be [ordered to enroll in the VOD]."  (Tr. 95.)  Defense counsel also argued that appellant will be on parole for five years and will have to see a parole officer at least once a month, and that "the five-year parole supervision will be adequate to overcome the presumption and the need to have [appellant] register as a violent offender."  (Tr. 96.)

{¶ 23} Regarding the culpability or involvement factor, the trial court opined that appellant's "activity set in motion" the attempted murder offense.  (Tr. 96.)  The trial court referenced the findings it made in imposing consecutive sentences, and stated that enrollment in the VOD was consistent with the findings the trial court made in imposing consecutive sentences.  Aside from the culpability or involvement factor, the trial court opined that enrollment in the VOD was consistent with the

other three factors in R.C. 2903.42(A)(4)(a)(i), (ii), and (iv). (Tr. 96.) The trial court concluded that registration was consistent with appellant's prior felony offenses indicating a propensity of violence, that registration was consistent with the interest of public safety, and that registration was consistent with the risk assessment indicating that appellant was "high risk." (Tr. 96.)

{¶ 24} Based on the findings the trial court made in imposing consecutive sentences, the trial court concluded,

> So I think it would be inconsistent for me to find that these other three factors did not overcome that presumption, considering I've already made that determination regarding consecutive sentences, because a lot of the same factors are essentially the same.
>
> So I am going to require the registration as a violent offender[.]

(Tr. 97.)

{¶ 25} The trial court ordered appellant to enroll in the VOD. Following the trial court's determination, appellant again refused to sign the sheet setting forth his registration duties as a violent offender.

{¶ 26} The trial court's September 26, 2019 sentencing journal entry provides, in relevant part, "[h]earing held on violent offender database registration on Case 637688 only. State concedes that [appellant] was not the principal offender as it relates to this case. Court considered the factors and determined that the presumption was not overcome and ordered that [appellant] register as a violent offender."[3]

---

[3] The trial court issued a nunc pro tunc sentencing entry on December 4, 2019, that did not pertain to the court's judgment ordering appellant to register as a violent offender.

{¶ 27} On October 24, 2019, appellant filed the instant appeal challenging the trial court's judgment. Appellant assigns two errors for review:

> I. The trial court erred in ordering that [appellant] be registered in Ohio's violent offender database under Sierah's Law both because it did not first give him proper notice required under R.C. 2903.42(A)(1)(a), and because it believed that a presumption that [appellant] should be registered still existed when it did not.

> II. The trial court erred by retroactively applying Ohio's violent offender registry to [appellant], in violation of Section 28, Article II of the Ohio Constitution, because placement on the registry is punitive, rather than remedial.

## II. Law and Analysis

{¶ 28} Appellant's assignments of error both pertain to the trial court's judgment ordering him to enroll in the VOD. The trial court's judgment was based on appellant's attempted murder conviction in CR-19-637688-A.

## A. R.C. 2903.42

{¶ 29} On March 20, 2019, R.C. 2903.41 et seq., commonly known as Sierah's Law, became effective. *See* 2018 Am.Sub.S.B. No. 231. Sierah's Law created a VOD and requires violent offenders convicted of specified offenses, including attempted murder, to enroll in the database. Sierah's Law creates a presumption that violent offenders enroll in the database, and provides enrollment for a minimum of ten years. Re-enrollment in the database is required on an annual basis.

{¶ 30} In the instant matter, Sierah's Law was not effective at the time appellant committed the attempted murder offense on October 14, 2018. However, Sierah's Law was effective when appellant pled guilty on August 19, 2019, and at the

time of the September 26, 2019 hearing during which appellant was sentenced and ordered to enroll in the VOD.

## B. Notice

{¶ 31} In his first assignment of error, appellant argues that the trial court erred by ordering him to enroll in the VOD because the trial court failed to give appellant proper notice as required by R.C. 2903.42(A)(1)(a). Based on the trial court's failure to provide him with proper notice, appellant contends that the matter "should be reversed and remanded to give [appellant] proper notice of the required hearing." Appellant's brief at 6. After reviewing the record, we agree.

{¶ 32} R.C. 2903.42(A)(1), governing enrollment in the VOD, provides,

(1) For each person who is classified a violent offender, it is presumed that the violent offender shall be required to enroll in the violent offender database with respect to the offense that so classifies the person and shall have all violent offender database duties with respect to that offense for ten years after the offender initially enrolls in the database. The presumption is a rebuttable presumption that the violent offender may rebut as provided in division (A)(4) of this section, after filing a motion in accordance with division (A)(2)(a) or (b) of this section, whichever is applicable. *Each violent offender shall be informed of the presumption established under this division, of the offender's right to file a motion to rebut the presumption, of the procedure and criteria for rebutting the presumption, and of the effect of a rebuttal and the post-rebuttal hearing procedures and possible outcome*, as follows:

(a) If the person is classified a violent offender under division (A)(1) of section 2903.41 of the Revised Code, the court that is sentencing the offender for the offense that so classifies the person *shall inform the offender before sentencing of the presumption, the right, and the procedure, criteria, and possible outcome*.

(Emphasis added.)

{¶ 33} Appellant was classified as a violent offender under R.C. 2903.41(A)(1) based on his attempted murder conviction, a violation of R.C. 2903.02(A) and 2923.02. Accordingly, the trial court was required to provide the advisements set forth in R.C. 2903.42(A)(1)(a) — the presumption established under this division, of the offender's right to file a motion to rebut the presumption, of the procedure and criteria for rebutting the presumption, and of the effect of a rebuttal and the post-rebuttal hearing procedures and possible outcome — before the sentencing hearing. The record reflects that the trial court failed to do so.

{¶ 34} As noted above, during the change-of-plea hearing, the trial court advised appellant that "there is a duty to enroll as a violent offender" and that appellant would be "pleading to a felony that qualifies [him] to register as a violent offender." (Tr. 44.) Although the trial court notified appellant of the duty to enroll during the change-of-plea hearing, the trial court did not inform appellant, as required by R.C. 2903.42(A)(1), of the presumption of enrollment established under R.C. 2903.42(A)(1), appellant's right to file a motion to rebut the presumption, the procedure and criteria for rebutting the presumption, and the effect of a rebuttal and the post-rebuttal hearing procedures and possible outcome. Nor did the trial court provide these advisements to appellant in its August 19, 2019 judgment entry in CR-19-637688 from the change-of-plea hearing, which provided, in relevant part, "[d]efendant notified of duties to register as violent offender."

{¶ 35} The trial court's advisement during the change-of-plea hearing that, under the plea agreement, "there is a duty to enroll as a violent offender," and that

appellant would be "pleading to a felony that qualifies [him] to register as a violent offender" was not sufficient to comply with the mandates of R.C. 2903.42(A)(1)(a). (Tr. 44.)  The statute provides that the trial court "*shall inform* [*appellant*] *before sentencing* of the presumption, the right, and the procedure, criteria, and possible outcome."  (Emphasis added.)  The trial court's advisement prior to sentencing that appellant "had a duty to enroll as a violent offender" did not adequately comply with the mandatory advisements of R.C. 2903.42(A)(1)(a).

{¶ 36} The statute is explicit, employing the word "shall," regarding the violent offender enrollment information the trial court was required to provide to appellant before sentencing.  This court recently acknowledged the principle that "shall means shall" and shall is a "word of command."  *State v. Brooks*, 8th Dist. Cuyahoga No. 108919, 2020-Ohio-3286, ¶ 7, citing *Black's Law Dictionary* 101 (8th Ed.2004).

{¶ 37} The record reflects that the trial court did provide the requisite advisements to appellant during the September 26, 2019 sentencing hearing. However, R.C. 2903.42(A)(1)(a) requires the trial court to provide the information to appellant "before sentencing."

{¶ 38} Based on the trial court's failure to provide the proper notice required by R.C. 2903.42(A)(1)(a) to appellant before sentencing, appellant did not have an opportunity to prepare for the enrollment hearing, did not have an opportunity to file a written motion to rebut the presumption, did not have an opportunity to prepare evidence to rebut the presumption in the event that the state did not

concede he was not the principal offender, or prepare evidence regarding the four factors under R.C. 2903.42(A)(4)(a)(i)-(iv). Furthermore, appellant was not aware of the effect of the rebuttal or the post-rebuttal hearing procedures and possible outcomes prior to the enrollment hearing.

{¶ 39} Notice must contain sufficient particularity to afford a person a meaningful opportunity to defend his or her rights in a matter. *See State ex rel. Johnson v. Cty. Court of Perry Cty.*, 25 Ohio St.3d 53, 58, 495 N.E.2d 16 (1986), citing *In re Gault*, 387 U.S. 1, 33, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) (notice must set forth the specific issues a party must address). Based on the trial court's failure to provide the requisite R.C. 2903.42(A)(1)(a) advisements to appellant, appellant had no ability to file a motion to rebut the presumption of registration or to otherwise prepare for the registration hearing. *See State v. Wilkinson*, 64 Ohio St.2d 308, 311, 415 N.E.2d 261 (1980) (at a minimum, notice must provide a party with time to prepare); *State v. Crews*, 179 Ohio App.3d 521, 2008-Ohio-6230, 902 N.E.2d 566, ¶ 9 (2d Dist.) (late notice failed to provide the party with a meaningful opportunity to be heard).

{¶ 40} Finally, in *State v. Hubbard*, 2020-Ohio-856, 146 N.E.3d 593 (12th Dist.), the defendant-appellant pled guilty on March 7, 2019, to murder that he committed in August 2018. The trial court advised the appellant, for the first time at the April 20, 2019 sentencing hearing, about Sierah's Law and the presumption that he enroll in the VOD.

{¶ 41} In the instant matter, like *Hubbard*, Sierah's Law was not effective when appellant committed the attempted murder offense in October 2018. As noted above, Sierah's Law became effective on March 20, 2019. Therefore, unlike *Hubbard*, Sierah's Law was effective at the time of the change-of-plea hearing on August 19, 2019. The trial court was required to, and should have provided the information set forth in R.C. 2903.42(A)(1)(a) to appellant before sentencing at the change-of-plea hearing.

{¶ 42} For all of the foregoing reasons, appellant's notice argument is sustained.

### C. Presumption of Enrollment

{¶ 43} Appellant further argues in his first assignment of error that the trial court erred in ordering him to enroll in the VOD because the trial court "believed that a presumption that [appellant] should be registered still existed when it did not." Appellant argues that based on the state's concession that appellant was not the principal offender in the commission of the attempted murder offense, the presumption of enrollment in the VOD no longer existed. After reviewing the record, we agree.

{¶ 44} As noted above, during the enrollment hearing, the trial court concluded, in relevant part,

> So I think it would be inconsistent for me to find that these other three factors [under R.C. 2903.42(A)(4)(a)(i), (ii), and (iv)] *did not overcome that presumption*, considering I've already made that determination regarding consecutive sentences, because a lot of the same factors are essentially the same.

So I am going to require the registration as a violent offender[.]

(Emphasis added.)  (Tr. 97.)

{¶ 45} Furthermore, the trial court's September 26, 2019 sentencing journal entry provides, in relevant part, "Court considered the factors and *determined that the presumption was not overcome* and ordered that [appellant] register as a violent offender."  (Emphasis added.)

{¶ 46} R.C. 2903.42(A)(4)(a) provides, in relevant part,

> [i]f the violent offender proves to the court, by a preponderance of the evidence, that the offender was not the principal offender in the commission of the offense that classifies the person a violent offender, *the presumption is rebutted* and the court shall continue the hearing for the purpose of determining whether the offender, notwithstanding the rebuttal of the presumption, should be required to enroll in the violent offender database and have all VOD duties with respect to that offense.

(Emphasis added.)

{¶ 47} Based on the state's concession that appellant was not the principal offender in the commission of the attempted murder offense, the presumption of enrollment was rebutted and no longer applied.  Accordingly, the trial court erred in concluding that the factors set forth in R.C. 2903.42(A)(4)(i)-(iv) did not overcome the presumption of enrollment in the VOD.

{¶ 48} For all of the foregoing reasons, appellant's presumption argument is sustained.

### D. Constitutionality of R.C. 2903.42

{¶ 49} In his second assignment of error, appellant argues that the trial court erred in retroactively applying R.C. 2903.42 to appellant, in violation of Section 28,

Article II of the Ohio Constitution, because enrollment in the VOD is punitive rather than remedial.

{¶ 50} In support of his argument, appellant directs this court to *State v. Jarvis*, 2020-Ohio-1127, 152 N.E.3d 1225 (5th Dist.), in which the Fifth District held that it was unconstitutional to apply Sierah's Law retroactively. Appellant acknowledges the holdings in *Hubbard*, 2020-Ohio-856, 146 N.E.3d 593, and *State v. Morgan*, 2020-Ohio-3955, 156 N.E.3d 989 (9th Dist.), which conflict with *Jarvis*. In *Hubbard*, the Twelfth District upheld Sierah's Law against defendant-appellant's constitutional retroactivity challenge. In *Morgan*, the Ninth District adopted the *Hubbard* rationale and held that it was constitutional to retroactively apply the statutory provisions in Sierah's Law. *Morgan* at ¶ 27, citing *Hubbard* at ¶ 37.

{¶ 51} In July 2020, the Ohio Supreme Court accepted *Hubbard* for review, and certified a conflict between *Hubbard* and *Jarvis* on the following issue: "[d]oes retroactive application of the violent offender database enrollment statutes codified in sections 2903.41 through 2903.44 of the Revised Code, commonly known as 'Sierah's Law,' violate the Retroactivity Clause of the Ohio Constitution, as set forth in Article II, Section 28 of the Ohio Constitution?" *State v. Hubbard*, Case Nos. 2020-0544 and 2020-0625, 2020-Ohio-3473, 148 N.E.3d 568; *State v. Jarvis*, Case No. 2020-0549, 2020-Ohio-3473, 148 N.E.3d 568. The matter is currently pending in the Ohio Supreme Court.

{¶ 52} In this appeal, appellant asks this court to weigh in on the constitutionality issue of Sierah's Law and to adopt the Fifth District's rationale in

*Jarvis.* After reviewing the record, we decline to review appellant's constitutional challenge to Sierah's Law.

{¶ 53} The record reflects that appellant failed to raise a constitutional challenge to Sierah's Law in the trial court — during the change-of-plea hearing or during the sentencing hearing when the trial court ordered appellant to enroll in the VOD.

> The "[f]ailure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal." *State v. Awan*, 22 Ohio St.3d 120, 489 N.E.2d 277 (1986), syllabus. *See also State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 15 (courts have discretion to decline consideration of forfeited constitutional challenges raised for the first time on appeal).

*State v. Young*, 8th Dist. Cuyahoga No. 108868, 2020-Ohio-4135, ¶ 20.

{¶ 54} By failing to object to the application of Sierah's Law or raise a constitutional challenge to the law in the trial court, appellant forfeited his constitutional challenge to Sierah's Law. Furthermore, appellant failed to raise a plain error argument in this appeal, and we decline to construct a plain error argument on appellant's behalf. *See State v. Dames*, 8th Dist. Cuyahoga No. 109090, 2020-Ohio-4991, ¶ 13-14, 18 (involving constitutional challenge to Reagan Tokes Act).

{¶ 55} We recognize the Ohio Supreme Court's holding in *Quarterman*, that appellate courts may still review a forfeited constitutional issue or a trial court's decision for plain error or "'where the rights and interests involved may warrant it.'"

*Id.* at ¶ 16, quoting *In re M.D.*, 38 Ohio St.3d 149, 527 N.E.2d 286 (1988), syllabus. However, in this case, we decline to exercise this discretion to review appellant's constitutional challenge.

{¶ 56} In *Jarvis*, 2020-Ohio-1127, 152 N.E.3d 1225, *Hubbard*, 2020-Ohio-856, 146 N.E.3d 593, and *Morgan*, 2020-Ohio-3955, 156 N.E.3d 989, the defendants-appellants raised constitutional challenges to Sierah's Law in the trial court. The defendant in *Jarvis* argued that application of the VOD enrollment requirements would violate the prohibition against retroactive laws set forth in Section 28, Article II of the Ohio Constitution, and also violate "ex post facto laws." *Id.* at ¶ 5. In *Hubbard*, the defendant argued that it was unconstitutional to retroactively apply Sierah's Law because it was punitive rather than remedial. *Id.* at ¶ 5. In *Morgan*, the defendant argued that the statutes governing VOD enrollment were unconstitutional when applied retroactively. *Id.* at ¶ 6.

{¶ 57} Unlike the defendants in *Jarvis*, *Hubbard*, and *Morgan*, appellant failed to preserve his constitutional challenge to Sierah's Law by asserting it in the trial court. Based on appellant's failure to raise his constitutional challenge in the trial court, the constitutional issue is entirely underdeveloped in the record before this court. Furthermore, because appellant did not raise the constitutional issue below, and the trial court did not weigh in on the constitutional issue, there is no ruling from the trial court. *See Dames*, 8th Dist. Cuyahoga No. 109090, 2020-Ohio-4991, at ¶ 17, citing *Sizemore v. Smith*, 6 Ohio St.3d 330, 333, 453 N.E.2d 632

(1983), fn. 2 (recognizing that justice is better served when there is a lower court decision for the appellate court to consider.)

{¶ 58} Finally, based on our resolution of appellant's first assignment of error, we need not address appellant's constitutional challenge to Sierah's Law for the first time in this appeal. *See Risner v. Ohio Dept. of Natural Resources, Ohio Div. of Wildlife*, 144 Ohio St.3d 278, 2015-Ohio-3731, 42 N.E.3d 718, ¶ 29 ("a court should avoid reaching constitutional issues if a case can be decided on other grounds.").

{¶ 59} For all of the foregoing reasons, appellant's second assignment of error is overruled.

### III. Conclusion

{¶ 60} After thoroughly reviewing the record, we sustain appellant's first assignment of error. The trial court failed to inform appellant, before sentencing, of "the presumption, the right, and the procedure, criteria, and possible outcome," as required by R.C. 2903.42(A)(1) and (A)(1)(a). Furthermore, the trial court erred in concluding that appellant failed to overcome the presumption of enrollment in the VOD because the state's concession that appellant was not the primary offender in the commission of the attempted murder offense rebutted the presumption of enrollment, such that it no longer applied.

{¶ 61} The trial court's judgment ordering appellant to enroll in the VOD is vacated. The matter is remanded to the trial court for the following purposes: (1) providing the advisements to appellant, as required by and in compliance with R.C.

2903.42(A)(1)(a); (2) a hearing on the issue of enrollment in the VOD; and (3) a new ruling on the issue of VOD enrollment, based on the factors set forth in R.C. 2903.42(A)(4)(a)(i)-(iv), and without the presumption of enrollment. Based on the state's concession, the presumption of enrollment was rebutted and no longer applies.

{¶ 62} Judgment vacated and remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellant recover of appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
EILEEN T. GALLAGHER, JUDGE

MARY J. BOYLE, A.J., and
EILEEN A. GALLAGHER, J., CONCUR